NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0545n.06

No. 08-5586

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOHN WESLEY GREEN,

    Plaintiff-Appellant,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY,

    Defendant-Appellee,

BOULT, CUMMINGS, CONNERS & BERRY, P.L.C.,

    Third Party Defendant-Appellee.

_____ /

**FILED**

*May 29, 2012*

LEONARD GREEN, Clerk

On Appeal from the United
States District Court for the
Middle District of Tennessee

**Before:**     **GUY, COLE, and ROGERS, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.** Plaintiff John Wesley Green appeals the

judgment entered in favor of the defendant Metropolitan Government of Nashville and

Davidson County (Metro or Metro Government) with respect to the dismissal of his claim

that the purported levy and execution sale of 22,000 shares of stock in his name deprived him

of his Fourth, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

After review of the record and having had the benefit of oral argument, we find the shifting

state-law landscape in the underlying action warrants reversal of the dismissal of the § 1983

claim, as well as Metro's associated third-party indemnity claim, and remand for further consideration consistent with this opinion.

**I.**

This action is an outgrowth of the underlying Tennessee state court action involving a dispute over control of the closely held corporation Champs-Elysees, Incorporated. That case began with John Wesley Green's attempt to enforce the agreement of his mother Edna Green to sell her shares of stock in the company to him. Without repeating the details of the power struggle or of the claims and counterclaims made by Green, his mother, or the company and its directors—all of which are set forth in several state court decisions—the Chancery Court found the agreement to sell the stock unenforceable and Green liable to the company for misappropriation. Green appealed the state court judgment without obtaining a stay, and the Chancery Court issued a writ of execution against Green's stock in the company on November 3, 2006. Claiming defects in the levy and notice of sale, Green tried unsuccessfully to stop the execution sale held on December 22, 2006. Those actions included filing a motion to quash the sale, which was not heard until after the sale and was denied first for mootness and then for lack of merit. Green appealed that decision as well.

Within hours of the execution sale, Green filed this action alleging that defects in the levy and execution sale violated his Fourth, Fifth, and Fourteenth Amendment rights (count 1), and constituted false return in violation of state law (count 2). Notably, Green did not name any individual defendants and, although the Sheriff's Department was initially sued,

there is no dispute that Metro Government is the proper defendant. Metro brought a third-party claim on the indemnity bond provided by counsel for the judgment creditor Champs-Elysees, Incorporated with respect to the underlying judgment.

Motions to dismiss, or to stay the proceedings, filed by Metro and the third-party defendant, raised a variety of grounds. The district court concluded that Green's allegations were not sufficient to meet the high burden required to plead municipal liability under § 1983, and that, even if they were, Green would not be permitted to make an end-run around the Chancery Court's rulings rejecting claims that the alleged defects affected the validity of the levy and sale. Finding failure to state a claim under Fed. R. Civ. P. 12(b)(6), the § 1983 claim and its related third-party claim were dismissed with prejudice, the state-law claim for false return and its related third-party claim were dismissed without prejudice, and the unresolved motions for summary judgment were denied as moot on March 20, 2008.

Green filed a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), relying in part on the state appellate court's recent reversal of the underlying judgment and the still pending state appeal of the denial of the motion to quash; arguing that principles of preclusion did not apply because Metro had not been a party to the state court action; and asserting a previously undeveloped claim based on the sale of allegedly exempt property. The district court denied the motion on April 22, 2008, emphasizing that the primary basis for dismissal had been Green's failure to allege an unconstitutional custom or policy and

deferring to the pending state court appeal regarding the alleged levy and sale of exempt property. This appeal followed.

**II.**

We review the dismissal for failure to state a claim de novo, asking whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The dismissal rested primarily on the conclusion that Green had failed to allege a municipal custom or policy that was the moving force behind the constitutional violation, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), or deliberate choice by an official with final policymaking responsibility with respect to the subject matter, *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

In the Second Amended Complaint, however, Green alleged that his attorney spoke with Captain Warren of the Davidson County Sheriff's Office and with Constance Taite, Administrative Counsel to the Sheriff's Office, "concerning the defective Levy and Notice of Sale," and was advised by each of them that "it was the custom, practice and policy of the Davidson County Sheriff's Department to not exercise independent judgment to correct, modify, or review any Levy issued by a court regardless of whether it was facially invalid." Green also alleged that Captain Warren acknowledged prior to the sale that he had not taken possession of the stock and that the notice of sale misspelled the company name, but stated

that it was the custom, policy and practice of the Sheriff's Office not to correct errors because that was "'what indemnity bonds are for.'"

That is, Green alleged that there were defects, that at least some defects were brought to the attention of Warren and/or Taite prior to the sale, and that a decision was made by them to go forward with the sale purportedly pursuant to a municipal custom or policy of disregarding errors in even a facially invalid levy. Whatever the proofs might ultimately be on this point, Green did not merely allege a policy of enforcing facially valid state court orders, even if they may from time to time be erroneous, which we have held cannot be an unconstitutional policy. *See Shelton v. Wallace*, No. 95-3552, 1996 WL 428363, at *3 (6th Cir. July 30, 1996) (unpublished).

Moreover, during the pendency of this appeal, the Tennessee Supreme Court affirmed the reversal of the underlying judgment, *see Green v. Green*, 293 S.W.3d 493 (Tenn. 2009), and the Tennessee Court of Appeals vacated the Chancery Court's denial of the motion to quash, *see Green v. Green*, No. M2007-00591-COA-R3-CV, 2009 WL 3672806 (Tenn. App. Nov. 4, 2009). The appeal in this case was held in abeyance for a time because of the pending state court appeals, which were expected to resolve questions concerning the validity of the levy and execution under state law. As it turns out, however, the latter appeal from the denial of the motion to quash vacated the rulings but did not resolve the issues in Green's favor either.[1] Rather, not reaching the issues raised by Green's claims, the court noted "the

---

[1]The Tennessee Court of Appeals also held that reversal of the judgment on which the execution sale was based would not entitle Green to return of the stock under state law, but that, on remand, Green

existence of factual questions related to the legitimacy of all stock issued by Champs-Elysees" and commented in a footnote that "[a]ny effort to resolve the issues in the instant appeal would be dependent upon, and subject to revision by, the determination of facts which are before the trial court on remand in the underlying case." *Green*, 2009 WL 3672806 at *4. The state case was indeed remanded for a trial that has reportedly been conducted—which, according to Green, included extensive testimony related to the levy and execution—and the matter is again on appeal before the Tennessee Court of Appeals.

Defendants argue, in the alternative, for affirmance on the grounds that the *Rooker-Feldman* doctrine precluded the federal court from exercising subject matter jurisdiction over the complaint. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). The Supreme Court has clarified that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Despite defendants' suggestion to the contrary, the federal action did not invite review of the (now reversed) underlying state-court judgment and Green's complaint does not challenge the state-court's authority to issue the writ of execution based on that judgment.

could seek to recover the proceeds of the sale. *Id*. at *2.

Further, the state-court order denying the motion to quash did not precede the filing of the federal action. After *Exxon Mobil*, we have described the pertinent inquiry to be whether the source of the plaintiff's claimed injury is the state-court judgment. *See McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006) ("If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim."). Nor does *Rooker-Feldman* preclude jurisdiction over an independent federal claim because it is "inextricably intertwined" with a state-court decision involving the same issue. *See Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 437 (6th Cir. 2006). We cannot conclude that dismissal would have been proper under the *Rooker-Feldman* doctrine.

Green has continued to challenge the denial of the motion to quash in state court based on at least some of the same defects in the levy and execution sale that Green claims resulted in the violation of his constitutional rights in this case. Since the district court's dismissal of this case, the state court has vacated the rulings with respect to the motion to quash, raised questions concerning the validity of any stock issued by the company (including that which was purportedly sold), and conducted a trial that apparently included testimony relating to the challenged levy and execution sale that is the basis for the claims against Metro in this case. These developments may affect the constitutional claims in this case, as well as the determination of whether a municipal custom or policy was a moving force behind the alleged violations.

The judgment is **REVERSED** and the case is **REMANDED** for further consideration

as may be appropriate in light of the current circumstances.

ROGERS, J., dissenting. I would affirm on the ground that Green has not sufficiently stated a claim, for the reasons given by the district court.